UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARYBETH WALZ,<br><br> Plaintiff,<br><br>  v.<br><br>VERIZON BUSINESS NETWORK SERVICES, INC.,<br><br> Defendant. | CASE NO. |

# COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

The Plaintiff, Marybeth Walz, brings this action claiming sex, pregnancy, and disability discrimination, retaliation, violation of the Family Medical Leave Act, and other unlawful conduct committed by Defendant Verizon Business Network Services, Inc. ("Verizon").

Ms. Walz was a dedicated and successful employee of Verizon for 17 years in a high-yield corporate sales capacity.  Like many working women in the United States, in order to prove herself at Verizon and achieve a certain amount of career success and financial stability, Ms. Walz postponed having a family.  Instead, she dedicated herself to becoming a top producer for Verizon where she regularly exceeded her sales goals.  After investing the time at Verizon that she believed was required to establish her professional reputation and reach a level of financial security, Ms. Walz was ready to become a mother.  However, due to complications resulting from cervical cancer, Ms. Walz required the assistance of a gestational carrier.  At great personal expense, Ms. Walz became the mother of twin boys in November 2013, with the help of a gestational carrier.

Despite Verizon touting itself as a "mother-friendly" workplace and "creating a supportive work environment that grants equality to working fathers, working mothers, adoptive and same-sex parents and military families," Verizon was anything but friendly to Ms. Walz. Instead, it deprived Ms. Walz of the paid maternity leave it offered to other mothers, requiring her to exhaust her accrued vacation and paid time off to care for and bond with her children. When her twins were born prematurely and suffered health complications – one, Donald Thaddeus "Thad" William Walz (hereinafter "Thad"), passed away the day after birth due to a pulmonary hemorrhage and the other, Jude Edward Lavery Walz (hereinafter "Jude"), passed away approximately six months later due to a rare form of congenital cancer – Verizon's response was shocking. First, Verizon demoted Ms. Walz while she was out on leave dealing with the death of Thad, the life threatening illness of Jude, and her own grief-related mental disability. Then, Verizon terminated Ms. Walz's employment shortly after Jude's death, when she filed for long-term disability. As alleged herein, Verizon's egregious conduct violates Federal and New Jersey laws.

## PARTIES

1.      The Plaintiff, Ms. Walz, is a female individual who resides at 21 Hubbard Avenue, Red Bank, New Jersey, 07701.

2.      The Defendant, Verizon, is a Delaware corporation, registered to do business in Massachusetts as a foreign corporation, with a principal place of business at One Verizon Way, P.O. Box 627, Basking Ridge, New Jersey, 07920. Verizon is a division of Verizon Communications that manages Verizon Communications' business and government clients.

3.      Verizon acquired MCI Communications, Inc. ("MCI") in January 2006. The division became Verizon Enterprise Solutions on January 1, 2012 and is based in Basking Ridge,

2

New Jersey. The services it provided include advanced communications, information technology, networking, cloud computing, data storage, managed security, machine to machine, and professional consulting. Verizon's network and services are available in more than 150 countries and it has employees in 75 countries. Verizon operates 200 data centers in 22 countries, providing cloud, hosting and Internet colocation services to customers. It also has partial ownership in 80 submarine cable networks worldwide, including the SEA-ME-WE 4, Trans-Pacific Express, and the Europe India Gateway systems. Verizon's business clients include many of the companies listed in the Fortune 500.

4. Verizon employs over 175,000 employees.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5. On or about September 11, 2014, Ms. Walz caused the filing of a Verified Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") in the Newark, New Jersey field office.

6. After more than 180 days had passed since the filing of the Charge with the EEOC, and on or about April 16, 2015, Ms. Walz requested a Notice of Right to Sue from the EEOC.

7. On or about June 12, 2015, Walz received a Notice of Right to Sue, a copy of which is attached hereto as <u>Exhibit A</u>.

**JURISDICTION AND VENUE**

8. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 because the civil action arises under the Constitution, laws, or treaties of the United States.

9. This Court has supplemental jurisdiction over Ms. Walz's concurrent state law and common law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Verizon is registered to do business and transacts business in this District.

## FACTUAL BACKGROUND

11. Beginning in 1997 and at all times relevant hereto, Verizon employed Ms. Walz as a full-time Senior Client Executive.

12. Ms. Walz's primary responsibility at Verizon included building executive level relationships in an effort to execute its global strategic plans with a team of sales, service, and solution engineers to ensure account growth and customer satisfaction. In this role, Ms. Walz developed existing business and executive level client relationships, cultivated new relationships, aligned with IT and business groups to uncover new opportunities, developed solutions, and sold strategic services.

13. During Ms. Walz's tenure with Verizon, Ms. Walz was a dedicated and astute employee continuously exceeding her sales targets in every sales position she held. Ms. Walz was a Multiyear President Club and Sales Excellence Award winner for Verizon, MCI and Worldcom. Ms. Walz excelled at her job, bringing in some of the largest clients among her colleagues.

14. Because Ms. Walz was partly compensated through earned commissions, her annual compensation was substantial as a result of her own hard work, and she was entitled to many company benefits. In 2013, Ms. Walz earned approximately $170,000. Over the last 10 years of her employment with Verizon, her compensation was regularly in excess of $170,000.

15. In 2001, Ms. Walz was diagnosed with cervical cancer. As part of her treatment, Ms. Walz's doctors removed her uterus, preventing her from ever becoming pregnant.

16. As someone who is unable to become pregnant, Ms. Walz suffers from a pregnancy-related medical condition and disability.

17. Ms. Walz's ovaries were not removed. In 2011, Ms. Walz had eight of her eggs retrieved and frozen with the purpose of fertilizing those eggs to allow her the possibility of biological children. This process is known as oocyte cryopreservation.

18. In 2013, Ms. Walz entered into an agreement with a sperm donor (hereinafter the "Donor"). The Donor agreed to donate his sperm to Ms. Walz for use in fertilization of her eggs that had been cryopreserved. The Donor agreed to waive all parental rights and responsibilities to any children resulting from the fertilization. The fertilization was successful, resulting in four embryos.

19. After or around the same time, Ms. Walz entered into an agreement with her sister-in-law, Colleen Marie Walz (hereinafter "Colleen"), pursuant to which Colleen acted as a gestational carrier for Ms. Walz. As the gestational carrier, Colleen agreed to the transfer of the embryos to her uterus for purposes of gestating the embryos and delivering one or more children on behalf of Ms. Walz. Colleen and her husband, Donald Francis Walz (hereinafter "Donald"), agreed to waive all parental rights and responsibilities to any children resulting from the transfer. Colleen was not biologically related to Thad or Jude; Donald, however, was their biological uncle.

20. On May 30, 2013, physicians transferred four embryos into Colleen's uterus. In early June, a pregnancy test revealed that two embryos were implanted, and Colleen was pregnant with Ms. Walz's twins. The babies were due on February 14, 2014.

21. Colleen and Donald reside in North Carolina, and did so during the relevant time period. During Colleen's pregnancy, Colleen visited doctors in North Carolina, and together with Ms. Walz, selected a North Carolina hospital at which Colleen would give birth.

22. Later, Ms. Walz, Colleen, and Donald obtained a pre-birth order from a North Carolina court (hereinafter "Consent Order"). The Consent Order provides that the birth

5

certificates list Ms. Walz as the only mother of each child; no name was to be entered for the father on the birth certificates. In addition, the Consent Order severs Colleen's and Donald's rights and responsibilities to Thad and Jude presumed under common law.

23.     In August 2013, Ms. Walz informed Kamuela Singleton (hereinafter "Singleton"), a Verizon Human Resources Business Partner, that she was expecting biological twin boys on approximately February 14, 2014 and wanted to utilize the paid maternity leave benefit upon the arrival of her twins. Singleton congratulated Ms. Walz.

24.     During her employment, Ms. Walz learned of the existence of a paid maternity leave policy, which would provide new mothers six to eight weeks of paid leave after the birth of their child. Verizon's own website specifically states: "Verizon offers new mothers time off so they can bond with their new child, whether that child joins the family through birth or adoption."[1]

25.     Ms. Walz explained to Singleton that she was having her biological twin boys by gestational carrier. Singleton's tone immediately changed, and she informed Ms. Walz that she would not be eligible for leave under a paid maternity leave policy and suggested that Ms. Walz apply for unpaid leave under the Family Medical Leave Act ("FMLA"). Ms. Walz explained to Singleton that she had her uterus removed during treatment for cervical cancer, rendering her unable to become pregnant. Ms. Walz further explained that the children would be her biological children, as they were conceived using her eggs, and that using a gestational carrier was the only method by which she could have biological children due to her disability. Singleton supplied Ms. Walz with documentation of Verizon's policy on taking leave under the FMLA. Singleton continued to deny Ms. Walz the paid maternity leave, to which Ms. Walz believed she was entitled.

---

[1] http://www.verizon.com/about/careers/working-parents (Sept. 8, 2015).

26. Verizon also offers an adoption assistance policy whereby Verizon will reimburse an eligible employee for qualified expenses up to $10,000.00 (hereinafter "Adoption Assistance Policy").

27. Verizon represents itself on its website as well as through self-serving radio and print advertisements as "a great place to work for working mothers" claiming that it "appreciates the importance of maintaining a successful work-life balance, and [it] is committed to helping [its] employees achieve it through time off benefits and alternate work arrangements" which specifically include "paid maternity leave." Verizon believes that this "means creating a supportive work environment that grants equality to working fathers, working mothers, adoptive and same-sex parents and military families."[2]

28. During an in-person meeting thereafter, Singleton asked Ms. Walz why she did not "just adopt" the twins. Ms. Walz explained that it did not make sense for her to adopt her own biological children, and would instead be obtaining the Consent Order. Singleton replied, "Shame you are doing it that way, because we would have given you the $10,000 [Adoption Assistance Policy] benefit." Singleton supplied Ms. Walz with information about the Adoption Assistance Policy.

29. Ms. Walz also explained to Singleton that as a single mother expecting twins, Ms. Walz needed the paid leave that she believed had been provided to other expecting mothers. Singleton's response was that paid leave was not available unless Ms. Walz was carrying the twins herself.

30. Because Ms. Walz's need for maternity leave had not yet arisen, Ms. Walz indicated to Singleton that she intended to continue the dialogue with Verizon on the issue of her eligibility for paid leave under a paid maternity leave policy.

---

[2] http://www.verizon.com/about/careers/working-parents (Sept. 8, 2015).

31. Due to Ms. Walz's financial concerns resulting from being told that she was ineligible for paid maternity leave, Ms. Walz sold her house to provide her with access to additional financial resources during her anticipated unpaid leave.

32. On October 28, 2013, Colleen went into preterm labor. The twins were not due for approximately 110 days.

33. Immediately, Ms. Walz rushed to the North Carolina hospital where Colleen was admitted.

34. With permission from her manager, Ms. Walz worked from North Carolina. Ms. Walz remained in regular contact with her manager during the months that followed.

35. On Tuesday, November 19, 2013, Colleen delivered Ms. Walz's twin boys by emergency caesarian section. Jude weighed two pounds, four ounces. Thad weighed two pounds, one ounce. Per the Consent Order, both Jude's and Thad's birth certificates reflect Ms. Walz as their mother and only parent.

36. The following evening, Thad suffered a pulmonary hemorrhage. He died on Wednesday, November 20, 2013 in Ms. Walz's arms.

37. Jude remained hospitalized and in critical condition. Ms. Walz did not leave his side.

38. At the end of 2013, Ms. Walz emailed Singleton to confirm what benefits were available to her. Ms. Walz reminded Singleton that the babies' birth certificates reflected Ms. Walz as the mother and only parent. In addition, Ms. Walz informed Singleton that her two babies were delivered, but that one had passed away the next day. Singleton replied, "Congratulations & my condolences."

39. In response, Singleton confirmed that Verizon was not granting Ms. Walz leave under a paid maternity leave policy, and instead was applying Ms. Walz's accrued vacation, personal, and "carryover" hours to Ms. Walz's leave. Singleton attached a calendar "to demonstrate how [Ms. Walz's] time out of the office has been coded thus far and the anticipated future coding."

40. The calendar revealed that Verizon did not "code" Ms. Walz's leave as qualifying under a paid maternity leave policy. Singleton told Ms. Walz that her accrued vacation, personal, and "carryover" hours would exhaust on February 21, 2014 and thereafter, she could apply for a leave of absence, such as unpaid FMLA leave. Ms. Walz indicated to Singleton that she intended to apply for FMLA leave as Jude was in critical condition and she needed to remain in North Carolina as she was his only legal guardian. Despite knowing that Ms. Walz was caring for her ill son, Singleton did not advise Ms. Walz that she could apply for New Jersey Family Leave Insurance which provides partial income replacement for, among other things, to care for a newborn child or sick family member.

41. Verizon's denial of Ms. Walz's request for paid leave under a paid maternity leave policy caused Ms. Walz to experience emotional distress.

42. On information and belief, other female employees at Verizon who delivered children after a pregnancy were granted paid leave under a paid maternity leave policy.

43. Thad was scheduled to be buried on January 25, 2014.

44. Thad's funeral was canceled as Jude exhibited additional signs of severe illness. Jude was airlifted from the North Carolina hospital to The Children's Hospital of Philadelphia. There, Jude was diagnosed with Infantile Fibro Sarcoma, a very rare form of congenital cancer.

857556.6

At The Children's Hospital of Philadelphia, Jude endured chemotherapy, infection, renal failure, and many other issues. Ms. Walz remained by Jude's side throughout his treatment.

45.  On February 4, 2014, Singleton notified Ms. Walz by email that Verizon changed her manager and the sales team to which she was assigned. This change was effectively a demotion that removed Ms. Walz from a team with Senior Client Executives and an established customer base of large companies and, instead, placed her on an entry level sales team with smaller acquisition type accounts and much smaller sales potential. Had Ms. Walz not been unlawfully terminated, this demotion would have had a material diminutive effect on Ms. Walz's future compensation. Ms. Walz expressed her concerns to Verizon that this "change in manager" was a demotion that would materially affect her compensation. She also stated her concerns that the demotion was due to her being out on leave to care for her ill son.

46.  Upon information and belief, the fact that Ms. Walz was on leave and caring for her ill son contributed to the decision to demote Ms. Walz.

47.  Verizon's demotion of Ms. Walz caused her to experience further emotional distress. Ms. Walz became concerned as a result of this demotion and Verizon's treatment of her while she was on leave that she would lose her position at Verizon.

48.  Ms. Walz's emotional distress resulting from Verizon's treatment of her, including specifically her anxiety about losing the career that she had spent so much time and energy cultivating, during an otherwise emotionally traumatic time resulted in her subsequent major depressive disorder.

49.  On or about February 21, 2014, Ms. Walz applied for and was granted leave under the FMLA.

857556.6

50. On or about February 25, 2014, Ms. Walz applied for and was granted short-term disability based on her psychological condition.

51. Ms. Walz continued to care for Jude during his illness until his death on Thursday, May 22, 2014.

52. Ms. Walz continued to suffer from severe depression.

53. On or about August 24, 2014, Ms. Walz's short short-term disability ended. Shortly before Ms. Walz's short-term disability was scheduled to end, Verizon contacted Ms. Walz and asked what her plans were. Verizon did not offer any assistance such as a gradual return to work schedule, it did not inform Ms. Walz that any accommodations could be made to facilitate her return to work, and it did not attempt to engage in any sort of dialogue with Ms. Walz concerning her disability or her ability to return to work.

54. Because Ms. Walz was aware of no other option, she applied for benefits under Verizon's long-term disability insurance provided by Metropolitan Life Insurance Company ("MetLife").

55. On or about September 7, 2014, Ms. Walz spoke with a representative of MetLife. The representative informed Ms. Walz that MetLife had approved her long-term disability application, retroactive to August 25, 2014. The representative stated that Ms. Walz would receive approximately $7,000.00 per month based on her condition for up to two years, which would be the maximum lifetime benefit period. The representative informed Ms. Walz that she believed that if Ms. Walz's condition improved, and she had a doctor's recommendation, Verizon would give Ms. Walz her job back, or would provide her with a comparable job, at the end of Ms. Walz's approved long-term disability.

56. Ms. Walz anticipated that at some point she would be able to return to work and communicated this to Verizon. Indeed, Ms. Walz's medical provider specifically provided to MetLife an estimated date of return to work of January 1, 2015, and noted that Ms. Walz would need to return on a part-time basis initially as a reasonable accommodation for her disability.

57. On September 9, 2014, Ms. Walz received a letter from Verizon terminating her employment effective immediately (the "Termination Letter"). A copy of the Termination Letter is attached hereto as Exhibit B.

58. At no point prior to her termination did Verizon engage in any dialogue with Ms. Walz regarding the following: (i) her approximately four month additional leave under long-term disability; (ii) the issue of whether the four month leave was an undue burden to Verizon; or (iii) or whether there was another reasonable accommodation that would facilitate Ms. Walz's return to work.

59. On September 10, 2014, Ms. Walz received a call from Cindy Srock (hereinafter "Srock"), a Verizon Human Resources Consultant (Wireline HR Operations). Srock stated that she was calling to confirm Ms. Walz's receipt of the Termination Letter. Ms. Walz told Srock that she had received it, that she was shocked by her termination, and that she believed she would be able to return to work in the foreseeable future. Ms. Walz explained she thought that she would be able to return to her job at Verizon, or that she would be provided with a comparable job at the end of her absence. Ms. Walz stated that she could not believe what Verizon had put her through after her years of dedicated service. She stated that she was denied benefits that were available to other mothers, she was demoted while on FMLA leave to care for her dying child and to manage her own depression, and ultimately terminated because of her own disability. Ms. Srock replied that she wished there was something she could do.

60. Verizon's appalling conduct of precipitously terminating Ms. Walz's employment with no good faith effort to assist her in receiving an accommodation or engaging in any interactive process, caused Ms. Walz to suffer extreme emotional distress and anxiety, and caused her condition to worsen.

61. As a result of Verizon's wrongful conduct, Ms. Walz has suffered, and will continue to suffer, significant emotional distress and consequential damages, including, but not limited to, lost wages and benefits.

62. As of the date of filing, Ms. Walz remains unemployed.

## LEGAL CLAIMS

### COUNT I
**VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION**
**N.J.S. § 10:5-12(a)**
**SEX DISCRIMINATION**

63. Ms. Walz restates and incorporates by reference paragraphs 1-62 as if fully set forth herein.

64. N.J.S.§ 10:5-12(a) makes it unlawful, "For an employer, because of the … sex … of any individual … to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

65. Ms. Walz is female and therefore within the class of persons protected by N.J.S. § 10:5-12(a).

66. Verizon, through the acts and omissions described above, *inter alia,* has unlawfully discriminated against Ms. Walz on the basis of her sex in violation of N.J.S. § 10:5-12(a).

857556.6

67. As a direct, foreseeable, and proximate cause of Verizon's discriminatory acts, Ms. Walz has suffered, and continues to suffer, damages, including emotional distress, lost wages and employment benefits, interest, punitive damages, attorneys' fees, and costs.

## COUNT II
## VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION
## N.J.S. §§ 10:5-12(a), (s)
## PREGNANCY DISCRIMINATION

68. Ms. Walz restates and incorporates by reference paragraphs 1-67 as if fully set forth herein.

69. N.J.S. § 10:5-12(a) makes it unlawful, "For an employer, because of the … pregnancy … of any individual … to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

70. N.J.S. § 10:5-12(s) makes it unlawful, "For an employer to treat, for employment-related purposes, a woman employee that the employer knows, or should know, is affected by pregnancy in a manner less favorable than the treatment of other persons not affected by pregnancy but similar in their ability or inability to work."

71. Ms. Walz was affected by pregnancy and therefore within the class of persons protected by N.J.S. §§ 10:5-12(a), (s).

72. Verizon knew or should have known that Ms. Walz was affected by pregnancy-related medical conditions.

73. Verizon, through the acts and omissions described above, *inter alia,* unlawfully discriminated against Ms. Walz on the basis of her medical conditions related to pregnancy in violation of N.J.S. §§ 10:5-12(a), (s).

74. As a direct, foreseeable, and proximate cause of Verizon's discriminatory acts, Ms. Walz has suffered, and continues to suffer, damages, including emotional distress, lost wages and employment benefits, interest, punitive damages, attorneys' fees, and costs.

857556.6

## COUNT III
### VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION
### N.J.S. § 10:5-12(a)
### DISABILITY DISCRIMINATION

75. Ms. Walz restates and incorporates by reference paragraphs 1-74 as if fully set forth herein.

76. N.J.S. § 10:5-12(a) makes it unlawful, "For an employer, because of the … disability … of any individual … to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

77. At all times relevant hereto, Ms. Walz suffered from a disability that substantially limits one or more major life activities and therefore is within the class of persons protected by N.J.S. § 10:5-12(a).

78. At all times relevant hereto, Verizon was aware that Ms. Walz suffered from a disability that substantially limits one or more major life activities.

79. Despite her disability, Ms. Walz was qualified for the position she held at Verizon and able to perform its essential functions.

80. Verizon, through the acts and omissions described above, *inter alia,* unlawfully discriminated against Ms. Walz on the on the basis of her disability in violation of N.J.S. § 10:5-12(a).

81. As a direct, foreseeable, and proximate cause of Verizon's discriminatory acts, Ms. Walz has suffered, and continues to suffer, damages, including emotional distress, lost wages and employment benefits, interest, punitive damages, attorneys' fees, and costs.

## COUNT IV
### VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION
### N.J.S. § 10:5-12(d)
### RETALIATION

82. Ms. Walz restates and incorporates by reference paragraphs 1-81 as if fully set forth herein.

15

857556.6

83. N.J.S. § 10:5-12(d) makes it unlawful, "For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act."

84. Ms. Walz engaged in protected conduct when she requested rights to which she was entitled and opposed the unlawful employment practices to which she was subjected at Verizon.

85. After Ms. Walz opposed said practices, Verizon subjected Ms. Walz to adverse employment actions.

86. As a direct, foreseeable, and proximate cause of Verizon's discriminatory acts, Ms. Walz has suffered, and continues to suffer, damages, including emotional distress, lost wages and employment benefits, interest, punitive damages, attorneys' fees, and costs.

### COUNT V
### VIOLATION OF FAMILY MEDICAL LEAVE ACT
### 29 U.S.C. § 2615(a)(1)
### RETALIATION

87. Ms. Walz restates and incorporates by reference paragraphs 1-86 as if fully set forth herein.

88. 29 U.S.C. § 2615(a)(1) makes it unlawful, "[F]or any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." In particular, "[a]n employer is prohibited from discriminating against employees … who have used FMLA leave." 29 C.F.R. § 825.220(c). Nor may employers "use the taking of FMLA leave as a negative factor in employment actions…" 29 C.F.R. § 825.220(c).

89. Ms. Walz engaged in protected activity under the meaning of the FMLA when she indicated her desire to exercise her rights thereunder.

90. As a result, Verizon retaliated against Ms. Walz, including *inter alia*, by effectively demoting Ms. Walz and diminishing her earning potential when she exercised her rights under the FMLA.

16

91.     As a direct, foreseeable, and proximate cause of Verizon's conduct, Ms. Walz has suffered, and continues to suffer, damages, including lost wages and employment benefits, interest, punitive damages, attorneys' fees, and costs.

## COUNT VI
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12112
## DISCRIMINATION

92.     Ms. Walz restates and incorporates by reference paragraphs 1-91 as if fully set forth herein.

93.     42 U.S.C. §12112 makes it unlawful for a cover employer to, "discriminate against a qualified individual on the basis of disability in regard to … employee compensation … and other terms, conditions, and privileges of employment."

94.     The term "discriminate against a qualified individual on the basis of disability" as used in 42 U.S.C. § 12112 includes, among other things, "utilizing standards, criteria, or methods of administration—that have the effect of discrimination on the basis of disability."  42 U.S.C. § 12112(b)(3)(A).

95.     At all times relevant hereto, Ms. Walz suffered from a physical or mental disability that substantially limits one or more major life activities and therefore Ms. Walz is within the class of persons protected by 42 U.S.C. § 12112(b)(3)(A).

96.     Verizon, through the acts and omissions described above, *inter alia,* unlawfully discriminated against Ms. Walz because of her disability in violation of 42 U.S.C. § 12112.

97.     As a direct, foreseeable, and proximate cause of Verizon's conduct, Ms. Walz has suffered, and continues to suffer, damages, including emotional distress, lost wages and employment benefits, interest, punitive damages, attorneys' fees, and costs.

## COUNT VII
## VIOLATION OF THE PREGNANCY DISCRIMINATION ACT
## 42 U.S.C § 2000e(k)
## PREGNANCY DISCRIMINATION

98. Ms. Walz restates and incorporates by reference paragraphs 1-97 as if fully set forth herein.

99. 42 U.S.C. § 2000e makes it unlawful for an employer to, "discriminate against any individual with respect to … compensation, terms, conditions, or privileges of employment, because of such individual's … sex."

100. 42 U.S.C. §2000e defines "because of sex" as follows:

> [B]ecause of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.

42 U.S.C. §2000e(k).

101. At all times relevant hereto, Ms. Walz suffered a pregnancy-related medical condition and is therefore protected by 42 U.S.C. § 2000e(k).

102. Verizon, through the acts and omissions described above, *inter alia,* unlawfully discriminated against Ms. Walz on the basis of her sex within the meaning of 42 U.S.C. § 2000e(k).

103. Verizon, through the acts and omissions described above, *inter alia,* treated Ms. Walz differently than other employees.

104. As a direct, foreseeable, and proximate cause of Verizon's conduct, Ms. Walz has suffered, and continues to suffer, damages, including lost wages and employment benefits, interest, punitive damages, attorneys' fees, and costs.

## COUNT VIII
## BREACH OF CONTRACT

105. Ms. Walz restates and incorporates by reference paragraphs 1-104 as if fully set forth herein.

106. As set forth above, there existed a contract concerning a paid maternity leave policy between Verizon and Ms. Walz.

107. Verizon had an obligation to provide Ms. Walz with paid maternity leave per the policy.

108. Verizon failed and refused to provide Ms. Walz paid maternity leave per the policy.

109. Verizon's failure and refusal to provide Ms. Walz paid maternity leave per the policy constitutes a breach of the contract.

110. As a result of Verizon's breach, Ms. Walz has suffered and continues to suffer damages, including attorneys' fees, interest, and costs.

## COUNT IX
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

111. Ms. Walz restates and incorporates by reference paragraphs 1-110 as if fully set forth herein.

112. An implied covenant of good faith and fair dealing existed in the employment contract between Verizon and Ms. Walz.

113. Verizon's acts and omissions described above, *inter alia,* constitutes a breach of that the implied covenant of good faith and fair dealing existed in the employment contract between Verizon and Ms. Walz.

114. As a result of Verizon's breach, Ms. Walz has suffered and continues to suffer damages, including attorneys' fees, interest, and costs.

WHEREFORE, the Plaintiff, Marybeth Walz, hereby requests that the Court enter judgment on her behalf against the Defendant, Verizon Enterprise Solutions, LLC, and award her damages as follows:

1. As to all Counts, an amount to be determined at trial, including compensatory damages, punitive damages as allowed by law, interest, costs, and attorneys' fee as allowed by law;

2. A permanent injunction restraining the Defendant from engaging in the employment practices detailed herein; and

3. Such other and further relief as the Court deems just and proper.

**THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIBALE.**

Respectfully submitted,

MARYBETH WALZ,

By her attorneys,

*/s/ Nancy M. Cremins*
Nancy M. Cremins, BBO#658932
Nancy.Cremins@gesmer.com
Nicole E. Forbes, BBO#674022
Nicole.Forbes@gesmer.com
Elisa A. Filman, BBO#681119
Elisa.Filman@gesmer.com
Gesmer Updegrove LLP
40 Broad Street
Boston, MA  02109
Telephone:  (617) 350-6800
Facsimile:  (617) 350-6878

DATED: September 9, 2015